IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN COULTER,<br><br>    Plaintiff<br><br>v.<br><br>UNKNOWN PROBATION<br>OFFICER, *et al.*,<br><br>    Defendants | CIVIL NO. 1:12-CV-2067<br><br><br>(Judge Rambo) |

## **M E M O R A N D U M**

*Pro se* Plaintiff Jean Coulter commenced this action by filing a complaint on October 15, 2012 (Doc. 1) pursuant to 42 U.S.C. § 1983. Following the filing of a motion to dismiss for failure to state a claim, Plaintiff filed an amended complaint on March 20, 2013. (Doc. 8.) Presently before the court is Defendants' amended motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) For the following reasons, the court will grant the motion. Also before the court is a motion to strike Defendants' reply brief (Doc. 16) and a renewed motion to force disclosure of the identity of the Unknown Probation Officer (Doc. 17), both of which the court will deny.

**I.**     **Background**

    **A.**     **Facts**[1]

Plaintiff is a resident of Pennsylvania and was, at all relevant times to this action, under the supervision of the Pennsylvania Board of Probation and Parole ("PaBPP"). (Doc. 8, Am. Compl., ¶ 1; *see also id.* ¶¶ 2-8.) Defendants are

---

[1] As required when deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations contained in Plaintiff's amended complaint. (Doc. 8.)

Unknown Probation Officer ("Unknown Officer"), Extended Stay America[2] ("Extended Stay"), and Colleen Murphy ("Murphy"), an area manager for Extended Stay hotels in the Horsham, Pennsylvania area. (*Id.* ¶¶ 2-4.)

For some period of time, Plaintiff resided at an Extended Stay property near Pittsburgh, Pennsylvania. (*Id.*, Facts ¶ 1.)[3] In the Fall of 2011, Plaintiff was contacted by Cynthia Daub, Deputy Executive Director of the PaBPP and "was <u>finally</u> told that she would be permitted to move to the Philadelphia Area." (*Id.* ¶ 2 (emphasis in original).) Apparently, Plaintiff preferred to live in the Philadelphia area and felt compelled by PaBPP to reside in Pittsburgh until that point.

After receiving permission to move to the Philadelphia area, Plaintiff began making arrangements to move to an Extended Stay facility in Horsham, Pennsylvania ("Extended Stay– Horsham"). (*Id.* ¶¶ 3, 4.) Plaintiff contacted Defendant Murphy to make arrangements for Defendant Unknown Officer to inspect the residence. (*Id.* ¶ 3.) Murphy indicated to Plaintiff that there should be no problem with the inspection's approval. (*Id.*) As Plaintiff continued making arrangements to move, Plaintiff received word approximately one month later that Murphy had refused to sign a "Home Provider Letter." (*Id.* ¶ 4.) Murphy informed Plaintiff that she would have to sign an Extended Stay lease before Murphy could provide a "Home Provider Letter." (*Id.* ¶ 5.) Accordingly, Plaintiff arranged to travel to Philadelphia to sign a lease in anticipation of her move to Horsham. (*Id.*)

---

[2] Extended Stay America owns and operates nearly 700 hotels throughout the United States and "specializes in providing business and leisure travelers a functional hotel suite at an exceptional value." *See http://www.extendedstayamerica.com/About/Default.html* (last visited May 13, 2013.)

[3] The paragraph numbering in Plaintiff's amended complaint re-starts at the beginning of each section. Thus, the court will identify the portion of the complaint referred to, followed by the appropriate paragraph number.

However, Plaintiff was unable to get in touch with Murphy regarding her plans to sign the lease, and Plaintiff was eventually informed by an Extended Stay employee that Murphy had decided to refuse residence to Plaintiff and that Plaintiff would not be permitted to reside at Extended Stay– Horsham. (*Id*. ¶¶ 5-6.)

At some point thereafter, Plaintiff learned that Unknown Officer had a conversation with Murphy, wherein Unknown Officer conveyed "facts" regarding Plaintiff. (*Id.* ¶ 6.) Plaintiff claims these "facts" were "half-truths" and "out-right falsifications." (*Id.*) Plaintiff claims her attempts to set the record straight were ignored and alleges that Murphy and Unknown Officer had entered into a "criminal conspiracy" by attempting to impose additional probationary restrictions on Plaintiff's place of residence. (*Id.*)

Plaintiff was also subsequently informed that Unknown Officer had rejected her residence at Extended Stay– Horsham because the facilities could not handle electriconic monitoring, "despite the fact that no court, at any time, has imposed [a s]entence which would require this provision . . . ." (*Id.* ¶ 7.) Shortly thereafter, Plaintiff was informed by employees of Extended Stay that she was no longer welcome to reside at the Pittsburgh location where she lived for nearly a year. (*Id.* ¶ 8.) Plaintiff avers that:

> By forcing [her] to remain in Western Pennsylvania, the Defendants effectively limited Coulter's association with individuals who chose a more urban lifestyle. Indeed, while Pittsburgh is a metropolis when compared with Butler County, . . . when compared with the diversity of residents in the Philadelphia area, the deprivation is readily evident. For example, the religious and political affiliations in Western Pennsylvania, are highly limited as compared to the Eastern portion of Pennsylvania.

(*Id.*, Cause of Action, ¶ 1(a).)

### B. Procedural History

On October 15, 2012, Plaintiff commenced this action by filing a *pro se* complaint. (Doc. 1.) On February 28, 2013, Defendants Extended Stay and Murphy filed a motion to dismiss (Doc. 6) and brief in support (Doc. 7). On March 20, 2013, Plaintiff filed an amended complaint. (Doc. 8.) On March 28, 2013, Defendants filed an amended motion to dismiss and brief in support (Docs. 10 & 11), to which Plaintiff filed a brief in opposition on April 17, 2013 (Doc. 12). Defendants filed a reply brief on April 29, 2013. (Doc. 15.) Thus, the motion to dismiss is ripe for disposition. On May 13, 2013, Plaintiff filed a motion to strike the reply brief (Doc. 16) and a renewed motion to force disclosure of the identity of Unknown Officer (Doc. 17).[4] The court will address these motions without the benefit of a response.

## II. Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.*, 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer

---

[4] Plaintiff filed a similar motion on April 17, 2013 (Doc. 13), which this court denied by memorandum and order dated April 22, 2013 (Doc. 14).

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However,

5

the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.** **Discussion**

    **A.** **Requests to Strike and Motion to Strike**

Before addressing the motion to dismiss, the court will first address: (1) Plaintiff's various requests, set forth in her brief, to strike certain documents, and (2) Plaintiff's separately-filed motion to strike Defendants' reply brief.

At various points throughout her brief in opposition to the motion to dismiss, Plaintiff requests that the court strike certain documents related to Defendants' motion. First, Plaintiff requests that the court strike the entire motion to dismiss due to the inclusion of improper information and further requests sanctions against Defendants for "unprofessional and vexatious" acts. (Doc. 12, p. 2.) Plaintiff does not specifically identify the allegedly improper information. Absent any specific arguments to the contrary, the court finds that Defendants did not present any "improper" information or are otherwise deserving of sanctions, and will therefore decline to strike the motion to dismiss or issue sanctions.

Plaintiff further requests that the court strike Exhibits A and B to Defendants' motion because they are beyond the scope of the complaint and are otherwise irrelevant. (*Id.*, pp. 2, 8.) Exhibit A to the motion includes several court opinions, in which Coulter is the named plaintiff. (*See* Doc. 11-1, including *Coulter v. Graham*, 23 A.2d 648, 2421 C.D. 2010 (Pa. Commw. Ct. June 14, 2011); *Coulter v. Butler Cnty. Children & Youth Servs.*, 2012 U.S. Dist. LEXIS 130517, No. 12-338 (W.D. Pa. Sept. 13, 2012).) Defendants include these opinions to demonstrate that Plaintiff, although proceeding *pro se*, is an otherwise experienced litigant, and to show that at least one court has cautioned that Plaintiff may be a vexatious serial litigant. (Doc 11-1, *Coulter v. Butler Cnty. Children & Youth Servs.*, 2012 U.S. Dist. LEXIS 130517, *9 ("Plaintiff's continued filing of frivolous and malicious litigation, which attack essentially the same core group of individuals, and are based upon essentially the same occurrences, exposes her to the possibility of being found to be a vexatious litigant. [] If Plaintiff persists in filing additional harassing and duplicative litigation, she will be ordered to show good cause why an order should not be entered against her.") (citations omitted).)

Exhibit B to Defendants' motion attaches Plaintiff's Butler County Court of Common Pleas criminal court summary and docket sheet. (Doc. 11-2.) Defendants include this exhibit to confirm Plaintiff's criminal history and her probationary status. Defendants further assert that her criminal history is relevant because the law establishes that the federal constitutional rights of criminal defendants subject to court supervision are limited as compared to other citizens.

The court finds no basis to strike either exhibit. Both judicial opinions and a docket sheets are public records for which this court may take judicial notice.

*Dean v. Copozza*, 2013 U.S. Dist. LEXIS 60841, *1 (W.D. Pa. April 10, 2013) ("Pennsylvania's Unified Judicial System provides online access to the docket sheet for criminal cases, and this court may take judicial notice of those dockets.") Further, as stated, matters of public record may properly be considered on a motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Moreover, the court finds that evidence of a vexatious litigant, or evidence of Plaintiff's criminal history, where such evidence may be dispositive to the present case or preclude an element of Plaintiff's constitutional claims in this matter, are relevant for the court's consideration. *See, e.g., Commonwealth v. Hartman*, 908 A.2d 316, 321 (Pa. Super. Ct. 2006) ("[A] person placed on probation does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who [have] not run afoul of the law.")

In Plaintiff's motion to strike Defendants' reply brief, Plaintiff argues that Federal Rules of Civil Procedure 7 and 12 do not contemplate the filing of the reply brief. While it is true that neither rule contemplates or requires a reply brief, Local Rule 7.7 specifically authorizes such a filing, and states: "A brief in reply to matters argued in a brief in opposition may be filed by the moving party within fourteen (14) days after service of the brief in opposition." M.D. Pa. L.R. 7.7. Defendants' reply brief was timely and otherwise properly filed. Accordingly, Plaintiff's motion to strike Defendants' reply brief will be denied.

### B. <u>Motion to Dismiss</u>

Plaintiff's amended complaint sets forth claims as follows: "a.) Violation of Fundamental Right to Housing, Violation Freedom of Association" and "b.) Violation of Fifth and Sixth Amendment to the Constitution, involving Right to

8

Due Process and Fair Trial Provisions." (Doc. 8, Causes of Action, ¶¶ 1(a) & (b).) Interpreting the amended complaint as liberally as possible, the court finds that Plaintiff brings the following claims: (1) a Fourteenth Amendment right to housing claim; (2) a housing discrimination claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; (3) a First Amendment right of association claim; (4) a Fifth and Fourteenth Amendment right to substantive due process claim; (5) criminal conspiracy; and (6) a Sixth Amendment right to a fair trial claim.

Plaintiff's claims of constitutional violations and violations of federal law are brought pursuant to 42 U.S.C. § 1983. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to

9

determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

As an initial matter, the court could dismiss this case as to Extended Stay and Colleen Murphy because both are private parties and there are no allegations sufficient to show state action. Courts determine whether a private entity has engaged in state action by utilizing the "close nexus test" and analyzing: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Chambers v. Phila. Media Network*, 2013 U.S. Dist. LEXIS 54406, *8-9 (E.D. Pa. Apr. 16, 2013) (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)). Here, Plaintiff's amended complaint does not allege facts sufficient to show that either Murphy or Extended Stay were acting on behalf of, or in concert with, the Unknown Officer, a state actor. The entirety of the allegations linking Extended Stay or Murphy to the Unknown Officer are a single conversation wherein Unknown Officer allegedly conveyed unspecified "half-truths and out-right falsifications." The allegation of a single conversation of unknown content is insufficient to convert Extended Stay and Murphy into state actors. *See Outen v. Prialeau*, 2013 U.S. Dist. LEXIS 64032, *5 n.2 (E.D. Pa. May 3, 2013) ("The activity of a private individual can be deemed to be 'under color of law' for purposes of § 1983 where [the] private party has acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the state.

10

However, some tenuous connection will not convert a private to a state action.") Moreover, because the complaint alleges that it was Unknown Officer who made the decision to reject Plaintiff's residence at Extended Stay–Horsham, it does not appear that Extended Stay or Murphy engaged in any "action," state or non-state.[5] Assuming, *arguendo*, that Extended Stay and Murphy could be considered state actors, the court nevertheless finds that Plaintiff's amended complaint otherwise fails to state any valid claims as to all Defendants, as explained more fully below.

### 1. Fourteenth Amendment Right to Housing Claim

In her complaint, Plaintiff alleges that Defendants' actions constitute a "Violation of Fundamental Right to Housing." (Doc. 8, Cause of Action, ¶ 1(a).) In her brief in opposition, Plaintiff argues that Unknown Officer, a state actor, was "imposing" a restriction on Coulter's residence, and "this restriction violates the Fourteenth Amendment, and is the basis of Coulter's housing discrimination claim." (Doc. 12, p. 9.) While the Fourteenth Amendment bars "any state [from] depriv[ing] any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, it is well-established that there is no federal or constitutional right to housing of a particular quality or in a particular community. *See Ye v. United States*, 484 F.3d 634, 637 (3d Cir. 2007) (citing *Lindsey v. Normet,* 405 U.S. 56, 74, 92 (1972) (holding that the state has no obligation to provide adequate housing)); *see also Schmidt v. Boston Housing Auth.*, 505 F. Supp. 988, 995 (D. Mass. 1981).

---

[5] The complaint does state in paragraph 6 that "Murphy had decided to refuse residence to Coulter." However, Plaintiff later alleges in Paragraph 7 that "Coulter was ultimately informed that Unknown Officer had 'rejected' her residence in Extended Stay, as it could not provide facilities to handle 'electronic monitoring' . . . ." (Doc. 8, Facts ¶¶ 6 & 7.) Thus, it is clear that Unknown Officer ultimately made the decision to deny Plaintiff residence at Extended Stay–Horsham, which is the action at issue in this matter.

Thus, Defendants' rejection of Plaintiff's preference to live in Eastern Pennsylvania does not rise to the level of a federal constitutional violation. Accordingly, this claim will be dismissed.

### 2. **Fair Housing Act Claim**

Although Plaintiff does not specifically mention the FHA, Plaintiff's complaint asserts a "Violation of Fundamental Right to Housing" as a cause of action (Doc. 8, Cause of Action, ¶ 1(a)), and references a "housing discrimination claim" in her brief in opposition (Doc. 12, p. 9). The court liberally interprets these statements as an attempt to bring a claim pursuant to the FHA.

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To establish a *prima facie* case of discrimination under the FHA, a plaintiff must prove: (1) that she is in a protected class; (2) that she applied and was qualified for housing; (3) that she was rejected; and (4) housing opportunities remained available. *See Koorn v. Lacey Twp.*, 78 F. App'x 199, 207 (3d Cir. 2003); *Pondexter v. The Allegheny Cnty. Housing Auth.*, 2012 U.S. Dist. LEXIS 117992, *21-22 (W.D. Pa. Aug. 21, 2012).

Plaintiff has failed to plead the elements required to make a *prima facie* claim under the FHA. First, Plaintiff has failed to plead, or otherwise demonstrate, that she is a member of a protected class. In fact, what little we know about Plaintiff from her amended complaint is that she is a probationer, and is therefore a member of a group that receives *less* constitutional protection. *See Hartman*, 908 A.2d at 321. Second, although it can be inferred from Plaintiff's complaint that she

requested to be transferred to Eastern Pennsylvania, there is no evidence of a formal application for housing, and no allegation that she was otherwise qualified for housing. To the contrary, the basis for the rejection of Plaintiff's preferred place of residence – that the Extended Stay– Horsham facilities "could not provide facilities to handle 'electronic monitoring'" – show that Plaintiff was *unqualified* to live at that particular location. Third, there is no allegation, reference, or inference that housing opportunities remained available at that location. Thus, this claim fails.

### 3. First Amendment Right of Association

The entirety of Plaintiff's right of association claim is, as follows:

> By forcing Coulter to remain in . . . Western Pennsylvania, the Defendants effectively limited Coulter's association with individuals who chose a more urban lifestyle. Indeed, while Pittsburgh is a metropolis when compared with Butler County, . . . when compared with the diversity of residents in the Philadelphia area, the deprivation is readily evident. For example, the religious and political affiliations available in Western Pennsylvania, are highly limited as compared to the Eastern portion of the state.

(Doc. 8, Cause of Action, ¶ 1(a).)

The "right of free association" is "a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Carroll v. Clifford Twp.*, 2012 U.S. Dist. LEXIS 113002, *18 (M.D. Pa. Aug. 10, 2012) (citing *Shelton v. Tucker*, 364 U.S. 479, 485 (1960)). The "impediments to the exercising of one's right to choose one's associates can violate the right of association protected by the First Amendment." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 80 n.4 (1984)). Courts have recognized two types of freedom of association claims: the right to freedom of intimate association and the right to freedom of expressive association. *Id.* (citing *Salvation Army v. Dep't of Cmty.*

13

*Affairs*, 919 F.2d 183, 198 (3d Cir. 1990)). The right of expressive association, implicated here, protects the "right to associate with others in a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* (quoting *Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (1984)).

It is well-established that a prisoner's right of association is severely limited. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("Freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context."). Likewise, a parolee's or probationer's right of association may also be limited, provided "the conditions bear a reasonable relationship to the goals of probation," namely rehabilitation and protection of the public. *See United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995); *United States v. Schave*, 186 F.3d 839, 844 (7th Cir. 1999); *United States v. Bird*, 124 F.3d 667, 684 (5th Cir. 1997); *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988); *United States v. Tonry*, 605 F.2d 144, 148 (5th Cir. 1979); *see also Wheeler v. Bd. of Prob. and Parole*, 862 A.2d 127, 130 (Pa. Commw. Ct. 2004) (stating that the Pennsylvania Parole Act "clearly envisions that restrictions can legitimately be placed on a parolee, similar to the restrictions that can be placed on incarcerated persons").

The court examines Plaintiff's First Amendment claim against the backdrop of a probationer's diminished right of association. The court finds that Unknown Officer's decision to prohibit Plaintiff from moving into Extended Stay–Horsham was not unreasonable under the circumstances. Critically, the court notes that Defendants only prohibited Plaintiff from moving to Extended Stay–Horsham because that facility is apparently poorly equipped to handle electronic

monitoring. The complaint does *not* assert that Defendants prohibited Plaintiff from seeking other housing opportunities in Eastern Pennsylvania. In other words, Defendants did not prohibit Plaintiff from associating with individuals or organizations from Eastern Pennsylvania, they merely prevented Plaintiff from transferring her residence to Extended Stay– Horsham. Plaintiff was otherwise free to associate with individuals, groups, and organizations from Eastern Pennsylvania, and seek appropriate housing in Eastern Pennsylvania that could adequately handle an individual under criminal supervision.

Moreover, although Plaintiff's amended complaint does not state with whom she wishes to associate, in her brief in opposition to Defendants' motion she states: "it is readily evident that by denying Coulter her <u>Right</u> to reside in the Philadelphia area, she is being effectively denied 'association' with a couple of million individuals - and even Defendants have never argued that Coulter must name every resident of the Philadelphia area!" (Doc. 12, p. 11) (emphasis in original.) Thus, Plaintiff's chief complaint appears to be that she has been denied the right to associate *with everybody*. However, there is no "generalized right of 'social association' that includes chance encounters . . . ." *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Although Plaintiff need not identify each and every person or group with which she wishes to associate, she must do more than allege a general deprivation of "religious and political affiliations." (Doc. 8, Cause of Action, ¶ 1(a).) *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.") For all the above reasons, Plaintiff's First Amendment right of association claim fails.

### 4. <u>Fifth and Fourteenth Amendment Substantive Due Process</u>

Plaintiff claims that Unknown Officer criminally conspired with Extended Stay and Murphy to prohibit her from living in the Philadelphia area, thereby denying her due process as required under the Fifth Amendment by placing a restriction on the terms of her probation that was neither issued nor approved by any court. (Doc. 8, Cause of Action, ¶ 1(b).)

The Fifth Amendment provides, in part, that "no person shall . . . be deprived of life, liberty, or property without due process of law . . . ." U.S. Const. amend. V. Substantive due process under the Fifth Amendment protects an individual from arbitrary government action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). A government employee violates substantive due process when his conduct "amounts to an abuse of official power that 'shocks the conscience.'" *Dommel Props., LLC v. Jonestown Bank & Trust Co.*, 2013 U.S. Dist. LEXIS 37343, *29 (M.D. Pa. Mar. 19, 2013) (quoting *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994)). "State conduct violates an individual's substantive due process rights when it is so brutal, demeaning, and harmful that it is shocking to the conscience." *Id.* (quoting *Elena v. Munic. of San Juan*, 677 F.3d 1, 7-8 (1st Cir. 2012) (internal quotations and citations omitted)). What qualifies as conscience-shocking is an intensely fact-specific inquiry and is likely to vary from case to case. *Id.* (citing *Lewis*, 523 U.S. at 847).

A Fifth Amendment due process claim is inapplicable here, because the Fifth Amendment applies only to the *federal* officials, and Defendants here are a private entity (Extended Stay), a private individual (Murphy), and a *state* official (Unknown Officer). *See Bergdoll v. City of York*, 2011 U.S. Dist. LEXIS 45729, *17 (M.D. Pa. Apr. 27, 2011) (finding that the Fifth Amendment Due Process Clause

16

applies only to federal officials, whereas the Fourteenth Amendment Due Process clause applies to state officials), *aff'd*, 2013 U.S. App. LEXIS 5190 (3d Cir. Mar. 15, 2013). However, even if the court interpreted Plaintiff's claim as a *Fourteenth Amendment* substantive due process claim, Unknown Officer would be the only Defendant implicated under this count. To the extent that Plaintiff tries to include Extended Stay and Murphy as state actors by claiming a criminal conspiracy, the court defers to its discussion above finding insufficient allegations to demonstrate that Murphy or Extended Stay were acting in concert with or on behalf of the Unknown Officer. (*See* Section III(B), *supra*.) In any event, this claim must be dismissed because the court finds that Unknown Officer's decision to deny Plaintiff residence at Extended Stay– Horsham due to a concern regarding electronic monitoring is not so brutal, demeaning, or harmful that it is shocking to the conscience.[6] Rather, the court finds Unidentified Officer's actions reasonable under the circumstances. Finding no basis for a substantive due process claim under either the Fifth or Fourteenth Amendment, the court will dismiss the claim.

### 5. Criminal Conspiracy

Plaintiff's claim for criminal conspiracy is not brought as a separate cause of action, but rather is subsumed within the Fifth Amendment substantive due process claim. *See* Section III(B)(4), *supra*. In any event, this claim must be dismissed. It is axiomatic that Plaintiff can not bring a criminal charge in a civil matter; criminal charges can only be brought by appropriate government authorities. To the extent that Plaintiff's claim could be interpreted as one for civil conspiracy,

---

[6] The "shocks the conscience" analysis also applies to a Fourteenth Amendment substantive due process claim. *See Lewis*, 523 U.S. at 846-47.

such a claim must also be dismissed. A claim for civil conspiracy arises under Pennsylvania law, and requires that plaintiff establish: (1) a combination of two or more persons acting in a common purpose to do an unlawful act or to do a lawful act by an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *See Oldcastle Precase v. VPMC, Ltd.*, 2013 U.S. Dist. LEXIS 67481, *38 (E.D. Pa. May 13, 2013) (citing *Skipworth by Williams v. Lead Indus. Ass'n, Inc.* 690 A.2d 169, 174 (Pa. 1997)). This claim must be dismissed for several reasons. First, the complaint indicates that Plaintiff's claims arise under 42 U.S.C. § 1983, a jurisdictional statute that may properly be invoked where Plaintiff is asserting a claim that her *federal* rights were violated. *See Bellinger v. Pa. Dep't of Corr.,* 2013 U.S. Dist. LEXIS 50073, *10 (M.D. Pa. April, 8, 2013). Thus, Plaintiff's state law claim for conspiracy, which is subsumed within a Section 1983 claim, can not properly be brought before this court as a Section 1983 action. Second, even if the court were to assume supplemental jurisdiction and consider the merits of the claim, it is clear from the analysis above that there was no unlawful purpose or unconstitutional actions by Defendants that might provide the basis for a conspiracy claim. Accordingly, the court will dismiss this claim.

### 6. <u>Sixth Amendment Fair Trial</u>

In the amended complaint, under causes of action, Plaintiff lists "Violation of . . . Sixth Amendment of the Constitution, involving . . . Fair Trial Provisions." (Doc. 8, Causes of Action, ¶ 1(b).) The Sixth Amendment states that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ." U.S. Const. amend. VI. Sixth Amendment guarantees are applicable only in the context of criminal prosecutions,

and are inapplicable to civil cases. *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011); *Dutkevitch v. W. Side Area Vo-Tech Sch.*, 2012 U.S. Dist. LEXIS 3663, *4 n.2 (M.D. Pa. Jan. 12, 2012). Thus, to the extent Plaintiff attempts to make a Sixth Amendment right to fair trial claim, that claim must be dismissed.

### C. Renewed Motion to Force Disclosure of Identity of Unknown Probation Order

On May 13, 2013, Plaintiff filed a Renewed Motion to Force Disclosure of Identity of Unknown Probation Officer. (Doc. 17.) The court previously denied a similar motion, reasoning that, should Plaintiff's complaint withstand the then-pending motion to dismiss, Plaintiff could pursue this issue in discovery. Having now granted Defendants' motion to dismiss, the court will dismiss the motion as moot.

## IV. Conclusion

For the reasons set forth herein, the court will grant Defendants' motion to dismiss with prejudice.[7] An appropriate order will be issued.

                                              s/Sylvia H. Rambo
                                              United States District Judge

Dated: May 22, 2013.

---

[7] The court finds that amendment would be futile. Notably, Plaintiff already had an opportunity to amend her complaint after having reviewed Defendants' initial motion to dismiss. Since Plaintiff has twice failed to state a constitutional claim, further amendment would be futile. *See Fletcher-Harlee Corp*, 482 F.3d at 252.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JEAN COULTER,**

   **Plaintiff**

  v.

**UNKNOWN PROBATION OFFICER,** *et al.***,**

   **Defendants**

**CIVIL NO. 1:12-CV-2067**

**(Judge Rambo)**

# <u>O R D E R</u>

  For the reasons set forth in the accompanying memorandum, it is **HEREBY ORDERED** as follows:

  1. Plaintiff's motion to strike Defendants' reply brief (Doc. 16) is **DENIED**;

  2. Defendants' motion to dismiss the amended complaint (Doc. 10) is **GRANTED**, and Plaintiff's complaint is **DISMISSED** with prejudice;

  3. Plaintiff's renewed motion to force disclosure of identity of unknown probation officer (Doc. 17) is **DENIED** as moot;

  4. The Clerk of Court is directed to **CLOSE** this case.

             s/Sylvia H. Rambo
             United States District Judge

Dated: May 22, 2013.